Filed 7/1/15 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2015 ND 174

Kevin D. Fugere, Plaintiff and Appellee

v.

Marie E. Fugere, Defendant and Appellant

No. 20140334

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Gary D. Ramsey, P.O. Box 1157, Dickinson, N.D. 58602-1157, for plaintiff and appellee; on brief.

Scott T. Solem and Allyson M. Hicks, P.O. Box 249, Beulah, N.D. 58523-

0249, for defendant and appellant; on brief.

Fugere v. Fugere

No. 20140334

Sandstrom, Justice.

[¶1] Marie E. Fugere appeals from a judgment granting Kevin D. Fugere a divorce from her, dividing their marital estate, and awarding her rehabilitative spousal support.  Because the district court’s property distribution from this short marriage is not clearly erroneous, we affirm.

I

[¶2] Kevin Fugere, who had been married twice before, and Marie Fugere, who had been married three times before, began dating in the summer of 2007.  In January 2009, they were engaged to be married.  Kevin Fugere had a large farm and ranch operation headquartered south of Belfield, and Marie Fugere served as postmaster in Belfield, making $60,000 per year.  Marie Fugere filed for bankruptcy in early 2009.  As their May wedding date approached, Kevin Fugere presented Marie Fugere with several proposed prenuptial agreements.  On May 6, 2009, after one of the prenuptial agreements was presented to her, Marie Fugere attempted suicide.  The wedding was postponed, and no prenuptial agreement was signed.

[¶3] The parties were married in August 2009 when Kevin Fugere was 51 years old and Marie Fugere was 46 years old, and they lived on the ranch.  According to Kevin Fugere, his net worth at the time of the marriage exceeded $3 million, consisting mainly of the ranch which he had operated since 1981.  Marie Fugere, having recently completed bankruptcy, brought to the marriage her Post Office Thrift Savings Account worth approximately $100,000 and some personal property.  Marie Fugere eventually quit her job as postmaster, assisted with the ranch work, and did most of the household chores.  She had emotional problems and drank excessively during the marriage.  She attempted suicide on two more occasions and spent time at a treatment facility in Grand Forks.  Following a quarrel with Kevin Fugere after Christmas 2012, Marie Fugere left the ranch in early January 2013.

[¶4] Kevin Fugere sued for divorce in January 2013.  No children were born of the marriage, so the trial focused on marital property division and spousal support.  Following the trial, the district court found the net value of the marital estate was nearly $5,850,000.  Mainly on the basis of the short duration of the marriage, the court awarded Kevin Fugere property having a net value of $5,688,215. The court awarded Marie Fugere property having a net value of $161,662, and a cash award of $105,000 to compensate her for “taking care of the house as well [as] her helping to the extent that she could in the farm/ranch operation.”  The court reduced the cash award by $24,000, which had been paid to her by Kevin Fugere through earlier interim orders.  The court also ordered Kevin Fugere to pay Marie Fugere $1,550 per month for five years for rehabilitative spousal support.

[¶5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Marie Fugere’s appeal is timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

II

[¶6] Marie Fugere argues the district court erred in distributing the marital estate.

[¶7] The standard for reviewing the distribution of marital property is well-

established:

A district court’s distribution of marital property is treated as a finding of fact, which we review under the clearly erroneous standard of review.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made.  This Court views the evidence in the light most favorable to the findings, and the district court’s findings of fact are presumptively correct.

Feist v. Feist
, 2015 ND 98, ¶ 4, 862 N.W.2d 817 (quoting 
McCarthy v. McCarthy
, 2014 ND 234, ¶ 8, 856 N.W.2d 762).

[¶8] Under N.D.C.C. § 14-05-24(1), a district court is required to make an equitable distribution of all the divorcing parties’ marital property and debts.  “All property held by either party, whether held jointly or individually, is considered marital property, and the court must determine the total value of the marital property before making an equitable distribution.”  
Hoverson v. Hoverson
, 2013 ND 48, ¶ 9, 828 N.W.2d 510.  “Separate property, even if it is inherited, must initially be included in the marital estate, but the property’s origin may be considered when equitably dividing the estate.”  
Feist
, 2015 ND 98, ¶ 6, 862 N.W.2d 817.  After the property is valued, the court must equitably divide the marital estate under the 
Ruff-Fischer
 guidelines, which require consideration of the following factors:

The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

Id.
 (quoting 
McCarthy
, 2014 ND 234, ¶ 9, 856 N.W.2d 762).  “Our law does not require a set formula or method for dividing marital property; rather, the division is based on the particular circumstances of each case.”  
Hoverson
, at ¶ 10.  “A property division need not be equal to be equitable, but a substantial disparity must be explained.”  
McCarthy
, at ¶ 10.  “We have often said that while a long-term marriage generally supports an equal division of property, a court may unequally divide property in a short-term marriage and award the parties what each brought into the marriage.”  
Dieterle v. Dieterle
, 2013 ND 71, ¶ 25, 830 N.W.2d 571.

[¶9] Marie Fugere argues the property distribution is clearly erroneous because she gave up a $60,000 per year job as postmaster to work on Kevin Fugere’s ranch and her hard work contributed to the increase in the parties’ net worth during the duration of the marriage.  Consequently, Marie Fugere contends she is entitled to one-half of the marital estate, or at the very least, one-half of what she alleged to be a 300 percent increase in the parties’ net worth during the marriage.  The problem with this argument is the district court found Marie Fugere simply quit her postmaster position without any urging by Kevin Fugere because she disliked the job, her work on the ranch was minimal, and nothing she did contributed to the increase in net worth during the duration of the marriage.  “‘The district court is in a better position than this Court to judge the credibility and observe the demeanor of witnesses.’”  
Kosobud v. Kosobud
, 2012 ND 122, ¶ 9, 817 N.W.2d 384 (quoting 
Eberle v. Eberle
, 2010 ND 107, ¶ 17, 783 N.W.2d 254).  Kevin Fugere testified Marie Fugere disliked her postmaster job because she could not take any time off, she found the job stressful, and he did not tell her to quit but agreed to her doing so “[b]ecause she was so unhappy there.”  Kevin Fugere testified Marie Fugere knew little about ranching when he met her, he did not need her to work on the ranch, “she followed me around and did just little things that she could do,” and she “couldn’t go off and do something on her own.  She was more like a shadow.  She was not a hired hand.”  Kevin Fugere testified Marie Fugere did very little ranch work without his direct supervision.  Although it is undisputed that Marie Fugere took over the household chores, the court included compensation for this in the property distribution.  The court’s findings are not clearly erroneous.

[¶10] The district court thoroughly analyzed the facts of this case under the 
Ruff-

Fischer
 guidelines.  The court noted the ages of the parties and addressed their earning abilities and their circumstances and necessities.  The court considered that “Kevin is continuing to work just as he had worked before with the assets that he brought into his marriage to Marie.”  The court considered that Marie Fugere gave up a well-paying job that included retirement and benefits and that she was currently working for Genex Cooperative, Inc., earning approximately $40,000 per year.  The court found “Marie is a hard worker and the Court trusts that she will be able to make a fairly good living out of the work that she has been able to employ, together with the assets in her property division.”  In addressing the parties’ station in life, the court noted that at the time of the marriage Marie Fugere had gone through bankruptcy and Kevin Fugere had accumulated a “substantial amount of wealth through his own personal hard efforts.”  The court found Marie Fugere had “somewhat recovered” by acquiring her new job and found “this factor probably favors Marie somewhat.”

[¶11] The district court addressed the conduct of the parties to the marriage and found “this factor favors Kevin to the limited extent that it applie[s].”  The court noted that although “Marie attempts to blame her erratic and destructive behavior on Kevin,” she “had these emotional and destructive issues prior to getting married to Kevin” and her conduct “is what bought this marriage to the point of failure.”  The court further determined “[t]here is not economic wasting that the Court can find from the conduct of either party in this particular case.”  In addressing the health and physical condition of the parties, the court found “Marie has struggled for many years with psychological problems and will continue to struggle with these emotional problems,” but “these problems are not attributable to Kevin.”  The court found that this factor favored Marie Fugere.

[¶12] It is evident from the district court’s decision that the duration of the marriage was a major consideration in dividing the property, and three and one-half years is a short-term marriage.  
See, e.g.
, 
Hoverson
, 2013 ND 48, ¶ 10, 828 N.W.2d 510, and cases collected therein.  The court explained:

The duration of the marriage is a factor under the 
Ruff-Fischer Guidelines
.  As the parties were informed at the outset, this is one of the factors that the Court finds to be most important.  The real property was something Kevin brought into this marriage and it would be inequitable to award Marie half of the real property.  Further, the appreciated value of the real property had nothing to do with any of Marie’s contributions as the property appreciated on its own.  The acquisition of the real property acquired by Kevin prior to this marriage should rightfully remain as his property.  In addition, the work that was done on the farm and ranch was not something that was equal between the parties as it was primarily Kevin who was responsible for the farm and ranch operation.  To the extent that the Court can, the real and personal property that Kevin had prior to his marriage to Marie, and its appreciation, will remain as Kevin’s.

From the date of marriage until the date of separation, this marriage lasted a total of 44 months.  If the Court were to adopt Marie’s argument that she is entitled to one-half of the net marital estate, her gain for the 44 months of marriage would be $66,578.00 per month.  If the Court went to the fall back argument of Marie that she should [b]e entitled to one-half of the appreciation, her net wind-fall would be $30,560.00 per month.  In addition to the foregoing amounts, counsel for Marie then claims that permanent spousal support should be added on top.  The position taken by Marie is so far removed from an equitable distribution under the circumstances, that it provides no assistance to the Court in trying to develop some type of equitable distribution.  The property of this marital estate, comes solely through the efforts of Kevin all which occurred prior to even having met Marie. Marie did not contribute to the land or its appreciation. 

. . . .

The concern that the Court has deals with how to compensate Marie for having left her employment.  Marie did contribute in assisting with the housekeeping and to some extent the farm/ranch operation. Kevin did receive the benefit of the labors of Marie in taking care of the house as well her helping to the extent that she could in the farm/ranch operation.  Marie gave up an approximately $60,000.00 a year job and as the Court has already indicated, she was primarily responsible for the decision to leave that job.  Nevertheless, the Court would compensate her at the rate of $30,000.00 per year for the three-and-a-half year marriage, resulting in $105,000.00 to be paid by Kevin to Marie within 90 days of the date of the Judgment in this particular matter.  This amount to be reduced by any lump sum amounts paid by Kevin to Marie for her costs in attorney’s fees associated with this particular case and referenced in prior Orders.

[¶13] The district court proceeded to address spousal support, which must be considered together with property division.  
See, e.g.
, 
Mertz v. Mertz
, 2015 ND 13, ¶ 27, 858 N.W.2d 292.  The court said:

Marie, through her counsel, maintains that she is entitled to permanent spousal support despite the limited duration of only a 44 month time that the parties resided together.  As has been mentioned several times, the primary decision to quit her employment with the U.S. Postal Service solely rests with Marie.  The continued blaming of Kevin as if he controlled Marie in her decision is unwarranted.  Nevertheless, Marie did give up an approximately $60,000.00 a year job and currently is earning approximately $40,000.00 a year.  It is the decision of the Court to maintain the current spousal support in the amount of $1,550.00 a month for a period of five (5) years as rehabilitative support.  Considering the emotional problems that Marie has been plagued with throughout most of her life, such seems fair and equitable under the circumstances.

[¶14] Marie Fugere relies on numerous cases to support her argument that the district court’s property division is inequitable.  Reliance on some of the cases is premised on her version of the facts, which the court rejected.  
See
 
Reiser v. Reiser
, 2001 ND 6, ¶ 11, 621 N.W.2d 348 (trial court found husband abused wife and wife increased value of asset by paying living expenses); 
Lill v. Lill
, 520 N.W.2d 855, 857 (N.D. 1994) (trial court found wife’s assistance enhanced value of husband’s farm).  Some cases involve long-term marriages or simply illustrate this Court’s deferential standard of review under N.D.R.Civ.P. 52(a).  
See
 
Horner v. Horner
, 2004 ND 165, ¶ 21, 686 N.W.2d 131 (standard of review); 
Peterson v. Peterson
, 1999 ND 191, ¶ 2, 600 N.W.2d 851 (long-term marriage); 
Moilan v. Moilan
, 1999 ND 103, ¶¶ 2, 5, 598 N.W.2d 81 (long-term marriage); 
Kautzman v. Kautzman
, 1998 ND 192, ¶ 17, 585 N.W.2d 561 (standard of review); 
Young v. Young
, 1998 ND 83, ¶¶ 2-3, 578 N.W.2d 111 (long-term marriage); 
Gegelman v. Gegelman
, 342 N.W.2d 404, 405 (N.D. 1984) (standard of review); 
Svetenko v. Svetenko
, 306 N.W.2d 607, 612 (N.D. 1981) (long-term marriage).  Other cases relied upon by Marie Fugere tend to support the court’s decision in this case.  For example, in 
Routledge v. Routledge
, 377 N.W.2d 542, 549 (N.D. 1985), this Court said “there is no rule that the trial court equally divide any increase in the net worth of the parties which occurred during the marriage.”  
See also
 
Wetzel v. Wetzel
, 1999 ND 29, ¶ 16, 589 N.W.2d 889; 
Spooner v. Spooner
, 471 N.W.2d 487, 491 (N.D. 1991).  This is especially true if the appreciated value of real property resulted more from the general inflation of land values which occurred during the marriage than from major improvements made to the property by the parties.  
See
 
Routledge
, at 548 n.4.  In any event, this Court’s affirmance of a property division in a divorce case does “not announce a rule of law requiring that all property divisions in future cases be handled similarly.”  
Id.
 at 548.  The court did not misapply the law in this case.

[¶15] Upon our review of the record, we conclude the district court’s property division is not clearly erroneous.

III

[¶16] Marie Fugere argues the district court erred in reducing her cash payment by $24,000, because the court “failed to adhere to the plain language of its own [original] Order.”

[¶17] The district court in this case entertained objections to the proposed findings and noted the phrase “costs in attorney’s fees” contained in the original order should have “said ‘costs and attorney’s fees.’  It was the intent of the court to reduce any amounts paid by Kevin to Marie prior to resolution of this matter.”

[¶18] We reject Marie Fugere’s argument for two reasons.  First, a district court certainly has the power to interpret or clarify a prior order, 
see, e.g.
, 
Conitz v. Conitz
, 467 N.W.2d 93, 94 (N.D. 1991), and the judge here said what he meant to say in the original order.  Second, and more important, even if the court misinterpreted its prior order, that order was a nonfinal interlocutory order subject to revision or reconsideration any time before a final order or judgment was entered.  
See, e.g.
, 
Martinson v. Martinson
, 2010 ND 110, ¶ 19, 783 N.W.2d 633.  The court was free to change its mind.  Marie Fugere’s argument is without merit.

IV

[¶19] It is unnecessary to address other arguments raised, because they either are unnecessary to the decision or are without merit.  The judgment is affirmed.

[¶20] Dale V. Sandstrom

Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.